# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

| | | |
|---|---|---|
| **BONNIE GEORGE, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Civil Action No. 2:17-cv-3114-MDH** |
| **vs.** | ) | |
| | ) | |
| **OMEGA FLEX, INC., et al,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## ORDER

Before the Court is Defendants' Joint Motion to Dismiss Plaintiffs' First Amended Complaint. (Doc. 82). The matter is fully briefed, the Court has heard argument from the parties regarding their positions, and the matter is ripe for review.

## BACKGROUND

This case has a lengthy procedural history. Plaintiffs originally filed a lawsuit against these and other Defendants alleging claims arising out of the sales of a flexible gas piping system known as Corrugated Stainless Steel Tubing ("CSST"). Plaintiffs' prior Complaint brought causes of action for Violation of Missouri Merchandising Practices Act (Count I); Conspiracy (Count II); and Unjust Enrichment (Count III). See *George v. Powercet, et al.,* Case No. 16-cv-04056-MDH. In the prior case, Defendants filed motions to dismiss arguing that Plaintiffs' claims should be dismissed because they lacked standing to bring their claims in federal court. The Court agreed with Defendants' arguments and held that Plaintiffs had failed to establish Article III standing to invoke federal jurisdiction. As a result, the Court dismissed Plaintiffs' claims, without prejudice. See *George v. Powercet, et al.,* Case No. 16-cv-04056-MDH, Doc. 126.

1

Plaintiffs then filed their second lawsuit in the Circuit Court of Pulaski County, State of Missouri. Plaintiffs' lawsuit again brought causes of action for Violation of Missouri Merchandising Practices Act (Count I); Conspiracy (Count II); and Unjust Enrichment (Count III). Contrary to Defendants' prior argument, that Plaintiffs could not establish Article III standing to invoke federal jurisdiction, Defendants removed Plaintiffs' second lawsuit to federal court. Defendants argued Plaintiffs now had Article III standing to invoke federal jurisdiction, but that the claims should be dismissed for failure to state a claim upon which relief can be granted. This Court found that Plaintiffs' allegations had not substantially changed from their prior lawsuit, and therefore held that its prior ruling still applied. The Court remanded the case back to state court, finding that Plaintiffs' allegations, including their claims for loss of the benefit of the bargain, were not enough to establish standing under Article III. (Doc. 61).

Defendants sought permission to appeal this Court's order to remand. The Eighth Circuit granted permission to appeal and reversed the Court's Order. *George v. Omega Flex, Inc.*, 874 F.3d 1031 (8th Cir. 2017). The Eighth Circuit described Plaintiffs' lawsuit as follows:

> Petitioners manufacture and sell yellow-insulated corrugated stainless steel tubing (CSST). CSST is used to distribute natural or propane gas within homes and other structures. George claims that CSST is susceptible to failure when exposed to electrical arcing from household appliances, and to indirect or direct lightning strikes. George filed a class action lawsuit in federal court alleging violations of the Missouri Merchandising Practices Act, conspiracy, and unjust enrichment. Petitioners moved to dismiss for lack of jurisdiction. The district court dismissed the claims without prejudice. George then sued in state court, again alleging MMPA violations, conspiracy, and unjust enrichment, but adding loss of benefit-of-the-bargain for the diminution in the value of the structures containing CSST.

*Id.*

The Eighth Circuit stated "that Article III extends judicial power only to cases and controversies" and that Plaintiff "has the burden to establish that she '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be

redressed by a favorable judicial decision.'" *Id.* (internal citation omitted). The Eighth Circuit found that Plaintiffs' allegations "of paying more than CSST is worth and the consequent loss in value of the structures are economic injury sufficient to establish Article III standing." *Id.*, citing *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 716 (8ᵗʰ Cir. 2017). The Court then reversed this Court and remanded the case for further proceedings consistent with its opinion. *Id.*

Upon remand, the Court held a status conference to discuss the status of the pending pleadings and motions. Plaintiffs sought, and were granted, leave to amend their Complaint. Defendants then filed a joint motion to dismiss the Amended Complaint. Defendants now argue that while the Court has jurisdiction over Plaintiffs' claims, the Amended Complaint should be dismissed for failure to state a claim. Plaintiffs oppose the motion.

**DISCUSSION**

In order for Plaintiffs to survive the pending motion to dismiss for failure to state a claim, the Amended Complaint "must 'alleg[e] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Kuhns v. Scottrade, Inc.,* 868 F.3d 711, 717 (8th Cir. 2017) (internal citation omitted). "A claim is plausibly pleaded when its 'factual context ... allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*. The Court makes "this determination by considering only the materials that are 'necessarily embraced by the pleadings and exhibits attached to the complaint." *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 911 (8th Cir. 2016)

"The MMPA provides a private right of action to any person who sustains ascertainable loss in connection with the purchase or lease of merchandise as a result of certain practices declared unlawful." *Kuhns v. Scottrade, Inc*., 868 F.3d at 719, citing Mo. Rev. Stat. § 407.025(1). Section 407.020(1) declares unlawful the use of "any deception, fraud, false pretense, false promise,

misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise." *Id.* "To be actionable under the MMPA, the alleged unlawful act must occur in relation to a sale of merchandise, and an ascertainable pecuniary loss must occur in relation to the plaintiff's purchase or lease of that merchandise." *Id.* (internal citations omitted). "[T]he literal words" of the MMPA have been described as "cover[ing] every practice imaginable and every unfairness to whatever degree." *Lane House Constr., Inc. v. Triplett*, 533 S.W.3d 801, 804 (Mo. Ct. App. 2017)(internal citations omitted) ("The statute and the regulation paint in broad strokes to prevent evasion thereof due to overly meticulous definitions."). Under the MMPA, it is an issue of the defendant's conduct, not his intent, which determines whether defendant has violated the act. *Id.*

Plaintiffs must show that they "1) purchased merchandise (which includes services) from defendants; 2) for personal, family, or household purposes; and 3) suffered ascertainable loss of money or property; 4) as a result of an act declared unlawful under section 407.020." *Edmonds v. Hough,* 344 S.W.3d 219, 223 (Mo. App. E.D. 2011) (internal citation omitted). "Missouri courts apply the 'benefit of the bargain' rule when determining if a plaintiff has suffered an ascertainable loss under the MMPA." *Polk v. KV Pharm. Co*., No. 4:09-CV-00588 SNLJ, 2011 WL 6257466, at *5 (E.D. Mo. Dec. 15, 2011) (citing, *Sunset Pools of St. Louis, Inc. v. Schaefer*, 869 S.W.2d 883, 886 (Mo.Ct.App.1994)). "The 'benefit of the bargain' rule awards a defrauded party the difference between the value of the product as represented and the actual value of the product as received." *Id.*

In the Court's previous Order, the Court stated that Plaintiffs failed to allege a contractual relationship with any Defendant. (Doc. 61).[1] Plaintiffs now specifically allege that many of them

---

[1] "Further, neither allege Plaintiffs had any personal knowledge of any representation by any Defendant regarding yellow CSST. Consequently, there is no allegation Plaintiffs relied on any

purchased CSST in connection with the building of their home, and that plaintiff Deraps personally remodeled his home and purchased CSST in doing so. Plaintiffs claim that they have been deprived the benefit of the bargain because the CSST product they purchased was represented as a safe and non-defective product, but because the product has inherent defects it is not safe, making it susceptible to failure and worth less. Plaintiffs argue having this product in their homes reduces the value and marketability of their homes. Plaintiffs' Amended Complaint alleges they have suffered a decrease in the value of their homes, paid more than the product is worth, and that their homes are unsafe.

Defendants contend Plaintiffs' claims for loss of benefit of the bargain provide the basis for the federal jurisdiction over these claims. However, Defendants state Plaintiffs cannot establish an ascertainable loss under the MMPA because the CSST is currently functioning in their homes. They further argue that Plaintiffs cannot establish a reduced value for their homes because the CSST has not exhibited any defects or failures.

Whether or not Plaintiffs can in fact prove an ascertainable loss under the MMPA is different than whether they have pled one in order to survive a motion to dismiss. The Eighth Circuit stated, Plaintiffs' "assertions of paying more than CSST is worth and the consequent loss in value of the structures are economic injury sufficient to establish Article III standing." *George v. Omega Flex, Inc.*, 874 F.3d at 1032 (citing *Kuhns v. Scottrade, Inc.*, 868 F.3d 711(8th Cir. 2017)). In *Kuhns,* the plaintiff asserted "that the difference between the amount he paid and the value of the services received is an actual economic injury that establishes injury in fact for his contract-related claims." *Kuhns v. Scottrade, Inc.,* 868 F.3d at 716. The Eighth Circuit has further

---

express representation made by any Defendant. There is no allegation Plaintiffs were even aware yellow CSST was used in the construction of their house at the time of purchase, or that CSST installation motivated their decision to purchase, or the purchase price paid."

stated, "it is crucial ... not to conflate Article III's requirement of injury in fact with a plaintiff's potential causes of action." *Id.* (citing *Carlsen v. GameStop, Inc.*, 833 F.3d 903 (8th Cir. 2016)).

In *Kuhns,* the plaintiffs' claims were based on a Privacy Statement that governed a Brokerage Agreement between the parties. *Id.* at 717. Plaintiffs alleged that defendant breached that agreement because it did not provide data security services that were set forth in the contract and paid for by plaintiffs. *Id.* "The Privacy Statement represented that, '[t]o protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings.' The contract also represented that Scottrade provides Secure Socket Layer encryption." *Id.*

> With regard to the MMPA claim, the Eighth Circuit stated:
>
> Kuhns asserts that Scottrade engaged in "fraudulent and deceptive acts and omissions" from its "failure to properly implement adequate, commercially reasonable security measures ... in the face of Scottrade's repeated representations and assurances to the contrary," its failure to warn plaintiffs their information was at risk, and its failure to discover and immediately notify affected customers of the data breach. Kuhns alleges that he suffered "lost money and property as a result of Scottrade's violations." This claim must be dismissed for several reasons. First, the allegation that Scottrade engaged in "fraudulent and deceptive acts" is a claim that sounds in fraud that was not pleaded with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. Second, to be actionable under the MMPA, the alleged unlawful act must occur in relation to a sale of merchandise, and an ascertainable pecuniary loss must occur in relation to the plaintiff's purchase or lease of that merchandise. While intangible services may qualify as merchandise, Scottrade did not sell data security services; it put data security measures in place to induce customers to voluntarily transfer their PII to Scottrade to obtain its brokerage services. The Consolidated Complaint also fails to plausibly allege how failing to discover and notify customers of the data breach qualifies as an unfair or deceptive trade practice under the statute.

*Id.* at 719 (internal citations omitted).

Defendants argue that Plaintiffs' claims in this case are similar to those in *O'Neil v. Simplicity, Inc.,* 574 F.3d 501 (8th Cir. 2009). In *O'Neil,* the plaintiffs brought numerous claims based on an alleged defect in a drop side crib. Plaintiffs claimed the drop side crib was defective

6

and therefore they did not receive the benefit of the bargain. *Id.* at 504. Defendants offered a

retrofit kit to resolve the alleged defect, but the kit disabled the drop-side function. *Id.* Plaintiffs

argued because the crib did not work as described they suffered an economic injury and sought to

recover the difference in the price between a crib with a functional drop side and a crib without.

*Id.* The Eighth Circuit found:

> the problem with this argument is that, because the O'Neils' crib has not exhibited
> the alleged defect, they have necessarily received the benefit of their bargain. The
> O'Neils purchased a crib with a functioning drop-side and that crib continues to
> have a functioning drop-side. Their bargain with Simplicity and Graco did not
> contemplate the performance of cribs purchased by other consumers. This case is
> similar to other no-injury cases, in that the O'Neils have attempted to refashion what
> is at its core a no-injury products liability suit into a suit based in contract."

*Id.* (internal citations omitted). The Court stated "economic loss – the only loss that they could

reasonably claim – is only recoverable in contract, if at all." *Id.* The Eight Circuit found no

contractual claims because defendants did not fail to deliver what was promised. *Id.* However, in

*O'Neil* the Court cited to "no-injury" product liability claims. *Id.* ("This case is similar to other

no-injury cases, in that the O'Neils have attempted to refashion what is at its core a no-injury

products liability suit into a suit based in contract."), citing, *In re Bridgestone/Firestone, Inc.*, 288

F.3d 1012, 1017 (7th Cir.2002) (noting that "most states would not entertain" no-injury products

liability cases); *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 455 n. 4 (5th Cir. 2001) (noting

that "the no-injury approach to product litigation has been rejected in several recent decisions");

and *Briehl v. Gen. Motors Corp.,* 172 F.3d 623, 627 and 630 (8th Cir. 1999) (Courts have been

particularly vigilant in requiring allegations of injury or damages in products liability cases and

concluding that the majority of courts dismiss unmanifested defect claims). The MMPA was not

the basis for the claims analyzed in these cases.

In *Faltermeier v. FCA US LLC*, Judge Kays analyzed a motion to dismiss plaintiff's claims under the MMPA. Case No. 4:15-CV-00491-DGK, 2016 WL 4771100, at *1 (W.D. Mo. Sept. 13, 2016).[2] In *Faltermier*, the plaintiff asserted that defendant made wide-spread misrepresentations to the general public, through the national media, about the safety of Jeep vehicles. *Id.* This information was disseminated after a recall was issued, and contained information stating the vehicles were "not defective," "safe to drive," and did "not pose an unreasonable risk to safety." *Id.* Plaintiff claimed the misrepresentations caused him, and the putative class members, a financial loss. Plaintiff argued that "they were deprived of the benefit of the bargain when they purchased Jeep Vehicles FCA represented as safe and non-defective, but were actually worth less than represented due to the defective, rear-mounted fuel tank design." *Id.*

First, Judge Kays found that "Missouri law 'make[s] clear that the consumer's reliance on an unlawful practice is not required under the MMPA.'" *Id.* at *7. The Court stated based on the information publicly disseminated containing the alleged misrepresentations it could be reasonably inferred that the statements would reach current and former owners of Jeep vehicles. *Id.* In addition, with regard to whether plaintiff suffered an ascertainable loss, Judge Kays stated:

> Here, Plaintiff alleges that FCA's representations of the Jeep Vehicles as "safe" and "not defective" caused him to pay more for his car than it was worth because the vehicles all have an inherent defect—an insufficiently-protected plastic fuel tank. This is not a "potential" defect, and Plaintiff does not allege that he merely risks having the defect manifest itself in his vehicle. *Cf. In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 617 (8th Cir. 2011) (finding, under Minnesota warranty law, that plaintiffs sufficiently alleged a cognizable injury where they argued a defect was "manifest" in the product and they did not merely risk having the defect

---

[2] Missouri federal courts have also discussed MMPA claims in which the alleged defective products at issue have not yet manifested a defect resulting in injury or damage, and have found plaintiffs cannot state a claim in those circumstances. See *Mikhlin v. Johnson & Johnson*, No. 4:14-CV-881 RLW, 2014 WL 6084004, at *3 (E.D. Mo. Nov. 13, 2014) ("The Court believes Plaintiffs' proposed liability theory, which requires no demonstrable loss of any benefit, would lead to absurd results and holds that Plaintiffs fail to state a claim as a matter of law."); and *Polk v. KV Pharm. Co.*, No. 4:09-CV-00588 SNLJ, 2011 WL 6257466, at *6 (E.D. Mo. Dec. 15, 2011).

manifest itself). Plaintiff must now bear the cost to bring his vehicle into conformance with FCA's representations regarding the fuel tank. Because Plaintiff sufficiently alleges he did not receive the benefit of the bargain in purchasing his vehicle, FCA's motion to dismiss on this ground is denied.

*Id.* at *8.

This Court agrees with the reasoning of Judge Kays. Here, Plaintiffs have a product they allege was represented as safe and not defective. Plaintiffs further allege it was represented that the product was "safe when properly installed." Plaintiffs claim they paid more for this product based on the product's alleged safety, but were denied the benefit of the bargain when the product was actually worth less than what was represented, a product with an alleged inherent defect. As stated by Judge Kays, "this is not a 'potential' defect" when Plaintiffs allege more than merely the risk that the defect will manifest itself in their homes. Plaintiffs allege, for purposes of this motion, that they did not receive the benefit of the bargain in purchasing CSST based on the representations that it was a safe and superior product. Plaintiffs claim the product, as purchased and installed, was less than the value of the product as represented, and this is sufficient to allege a claim for an ascertainable loss. "One measure of benefit-of-the-bargain damages is the cost of repairing the vehicle." *Id.* * 8 (internal citations omitted). Here, Plaintiffs argue they can either: 1) incur the cost to fix the alleged defective product; 2) incur the cost to replace the alleged defective product; or 3) suffer a loss in the decreased value of their home because of the alleged defective product. Based on these allegations, Plaintiffs have alleged they did not receive the benefit of the bargain. Whether the safety defect actually exists and whether Plaintiffs actually suffered loss of the benefit of the bargain are matters of proof, the sufficiency of which will be considered upon filing of dispositive motions or, and perhaps ultimately, at a trial by jury.

The cases cited by Defendants from the Eastern District of Missouri can be distinguished from the facts here. Unlike claims based on the use of a pharmaceutical product, or the use of

baby powder, where the plaintiffs could and did simply cease using the product, and had suffered no specific alleged damage as of the filing of their lawsuit, here, the Plaintiffs' allegations are that the homes in which they still live contain an alleged defective product. Plaintiffs cannot simply stop using a product and allege they are forced to either replace the alleged defective product or sell their home at a reduced price because of the CSST that exists in their home.

In addition, Defendants argue there is no connection between Plaintiffs and the sale of the product. However, Plaintiffs' Amended Complaint does, in fact, allege a relation between Plaintiffs and the purchase of the product, and under the MMPA, they are not required to plead reliance. While at this stage of litigation it is unknown whether Plaintiffs will be able to succeed on their claims, the Court finds that they have plead enough to survive Defendants' Motion to Dismiss.

## CONCLUSION

Taking Plaintiffs' factual claims as true, and for the reasons set forth herein, the Court hereby **DENIES** the Motion to Dismiss and finds Plaintiffs have stated a claim for which relief could be granted.

**IT IS SO ORDERED.**

Dated:  July 24, 2018                    */s/ Douglas Harpool*_____
                                         Douglas Harpool
                                         United States District Court