IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| BONNIE GEORGE, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Civil Action No. 2:17-cv-3114-MDH |
| | ) |
| OMEGA FLEX, INC., et al, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Before the Court is Plaintiffs' Motion for Class Certification pursuant to Fed. Rul. Civ. P. 23 (Doc. 225); Defendants' Motion to Strike the Declarations of Mark Goodson and Alain Rousseau (Doc. 266); Defendants' Motions to Exclude Opinions of Aaron Hedlund (Doc. 268 and 310); and Defendants' Motion for Summary Judgment. (Doc. 305). For the reasons set forth herein, Defendants' Motion for Summary Judgment is **GRANTED**. The remaining motions are **DENIED** as further discussed herein.

## BACKGROUND

Plaintiffs' class action lawsuit alleges violations of the Missouri Merchandising Practices Act ("MMPA"), conspiracy, and unjust enrichment. Defendants manufacture and distribute corrugated stainless steel tubing (CSST), a flexible pipe used to transport natural or propane gas within homes and structures. Omega Flex manufactured and sold TracPipe® brand CSST in the U.S. from approximately 1997 until September 2011. Titeflex manufactured and sold Gastite® brand CSST in the U.S. from approximately 1992 until 2015. Ward began selling WARDFLEX® brand CSST in the U.S. in the early 1990s and continues to manufacture and sell it in the U.S. today. Plaintiffs refer to all three of these brands as "Yellow CSST." The parties dispute whether

1

bonding and grounding Yellow CSST is an effective method to protect equipment and systems from electrical energy over a wide range of industries.[1]  The alleged defect is the safety of the product installed in Plaintiffs' homes.[2]  It is undisputed that at the time of this lawsuit Yellow CSST has not caused any physical damage to the Plaintiffs' homes or structures.  Rather, Plaintiffs' lawsuit alleges the Yellow CSST present in their homes has caused, or will cause, a diminution of value to their homes.[3]

**The Omega Flex Plaintiffs**

Plaintiffs Brian Immekus, Bobbie Lee, Ron Metzgar, James Rehm, and Tammy Volkart (together, the "Omega Flex Plaintiffs") each own or previously owned a home in which TracPipe is installed.  Brian Immekus acquired his TracPipe in January 2012 while building his home in Sullivan, Missouri. Mr. Immekus testified that he "didn't know in advance that TracPipe was going to be installed during the construction of [his] home," that he "didn't make the decision to include TracPipe in [his] home at the time of construction," and that he "didn't give any thought to whether TracPipe would be installed in [his] home at the time of construction."  Mr. Immekus testified that he was "unaware of any statements by any of the defendants about yellow CSST when [he] acquired [his] TracPipe," that he was "unaware of any statements by defendants about bonding and grounding when [he] acquired [his] TracPipe," and that "Omega Flex made no statement in

---

[1] A number of the "material facts" regarding the bonding and grounding standards and the codes related to the same are disputed.  The Court finds these disputed facts are not material to the Court's ruling on the pending motions.  This includes the reports submitted by engineers regarding the safety of Yellow CSST when bonded and grounded.  However, the Court does consider any relevant facts in a light most favorable to Plaintiff as the non-moving party.
[2] One of the Plaintiffs is not a homeowner. Amazing Grace Community Church is identified as a Plaintiff.
[3] A 2004 class action lawsuit filed in state court alleging that CSST posed an unreasonable risk and/or danger of fire due to lightning strikes was resolved via settlement.  The state court approved the settlement and found that the marketing efforts agreed to by the parties satisfied the terms of the settlement agreement and adequately warned of the alleged risks to CSST posed by lightning.

connection with any purchases that [he] made," including his purchase of TracPipe. Mr. Immekus' TracPipe was bonded and grounded when it was installed, but he does not know whether the person who installed his CSST specifically charged a fee to bond and ground it or whether he was paid as part of his other work. Mr. Immekus testified that he "never actually had a problem with [his] TracPipe in the seven-plus years since it was installed," but that he "would like to replace the TracPipe in the future" and that the reason for wanting it replaced is his "new knowledge that it is a less safe material."[4] Mr. Immekus' home was appraised as of May 28, 2012 at approximately $45,000 more than he paid for it. Plaintiff states the appraisal includes the value of gifted land as a well as the home.

Plaintiff Bobbie Lee acquired her TracPipe in September 2009 while building her home in Sullivan, Missouri. Ms. Lee testified that she "didn't know in advance that the TracPipe was going to be installed in the home," that she "didn't make the decision to install TracPipe in [her] home," and that "at the time that [her] home … was built, [she] had never heard of yellow CSST." Ms. Lee further testified that "the inclusion of CSST in [her] home … was not significant to [her] at the time that [she] purchased the home." Ms. Lee testified that she was "unaware of any statements by Defendants about yellow CSST when [she] acquired [her] TracPipe," that she was "unaware of any statements by Defendants about bonding and grounding when [she] acquired [her] TracPipe," and that "Omega Flex made no statement in connection[] with any purchases that [she] made," including her purchase of TracPipe. Ms. Lee's TracPipe was bonded and grounded when it was installed. Ms. Lee testified that she "never had a problem with [her] TracPipe in the eight years

---

[4] Mr. Immekus testified that his TracPipe "has been living up to [his] expectations," that it is "still providing [him] with the value that [he] expected," and that he is "not claiming in this lawsuit that [he] overpaid for [his] TracPipe." Plaintiffs argue this testimony is taken out of context and that Mr. Immekus would like to replace the CSST in the future because he has knowledge that it is a less safe material.

3

that [she] owned it," but she believes OmegaFlex should replace the yellow CSST with Black CSST. Ms. Lee's home was appraised as of October 27, 2009 at approximately $8,000 more than what she paid for it. Ms. Lee never repaired or replaced her TracPipe, nor did she perform any other remedial measures to address her perception that the TracPipe installed in her home was dangerous. Ms. Lee sold her home in October 2017. Ms. Lee testified that "the value of [her] home increased over time" such that she was "able to turn a profit when [she] sold the home," and she acknowledged "that the presence of TracPipe in [her] home did not decrease the value of [her] home." Ms. Lee testified that "there was no reason for [her] to disclose the presence of yellow CSST when [she] sold [her] home," and that she "didn't agree to sell the home for a lower price on account of the yellow CSST." Plaintiff states she formed her belief about the difference between Black and Yellow CSST in late 2018 and joined the case in January 2019.

Ron Metzgar acquired his TracPipe in 2009 during the construction of his home in Waynesville, Missouri. Mr. Metzgar testified that he "did not make the decision to install yellow CSST in [his] home," and that he "didn't know that yellow CSST was going to be installed during construction." Mr. Metzgar testified that "[p]rior to being involved in this lawsuit, [he] did not see any marketing materials from Omega Flex." Mr. Metzgar's CSST is not bonded and grounded. Mr. Metzgar testified that he was "not asserting that [he] overpaid for [his] CSST." He also testified he has shut off the gas and no longer uses the CSST.

James Rehm acquired his TracPipe in 2011 during the construction of his home in Waynesville, Missouri. Mr. Rehm testified that he "w[as]n't aware of any advertising or marketing from Omega Flex until years after the construction of [his] home," and that he did not "see a statement from Omega Flex regarding bonding and grounding when [he] installed [his] yellow CSST." Mr. Rehm's CSST is not bonded and grounded and he testified that he has never "had a

4

problem with [his] CSST." Mr. Rehm's home was appraised as of September 17, 2015 at approximately $115,000 more than he paid for it.

Tammy Volkart acquired her TracPipe in 2007 when she purchased her home in California, Missouri. Ms. Volkart testified that "yellow CSST was not something [she] considered when buying [her] home," that "at the time that [she] bought the home, [she] had actually never heard of CSST," and that "the inclusion of the CSST in [her] home was not significant to [her] when [she] purchased the home." Ms. Volkart testified that when she acquired her TracPipe, she was "unaware of any statements that Omega Flex had made about the product" and that Omega Flex "made no statements in connection with any purchases that [she] made," including her purchase of TracPipe. Ms. Volkart's CSST is not bonded and grounded and she testified that "there's never been a problem with [her] TracPipe CSST in the 12 years since it was installed." However, she wants to replace it because "there's a danger in it." Ms. Volkart testified that her TracPipe "is living up to [her] expectations" and "is still providing [her] with the value [she] expected when [she] bought [her] home," and that she has not "experienced any monetary losses from having TracPipe installed in [her] home." Ms. Volkart's home was appraised as of March 26, 2010 at approximately $43,500 more than she paid for it, and again as of February 26, 2016 at approximately $58,500 more than she paid for it. Ms. Volkart rented out her home beginning in June 2016.

**The Titeflex Plaintiffs**

Plaintiffs Cedar Deraps, Bonnie George, and Casey Wasser (the "Titeflex Plaintiffs") each own a home in which Gastite is installed. Cedar Deraps acquired his Gastite in or about late 2007 or early 2008, when he remodeled his home in Jamestown, Missouri. Mr. Deraps' CSST is bonded and grounded through work he performed himself in 2017. Mr. Deraps testified that his Gastite

CSST has "never failed" or leaked gas. Mr. Deraps admits he paid no money for his CSST, which he acquired from his family's company. Mr. Deraps testified he exchanged labor for the CSST, as well as other building supplies, through an informal agreement with his father. Mr. Deraps testified that he has never tried selling his home. Deraps' home was appraised as of May 1, 2013 at approximately $55,000 more than he paid for it, and as of June 9, 2015 at approximately $88,695 more than he paid for it.

Bonnie George acquired her Gastite in 2011 while building her home in California, Missouri. Ms. George testified that she had "never heard of CSST prior to 2015" and "never saw any representations or communications from anyone about CSST prior to 2015." Ms. George's CSST is not bonded and grounded. Ms. George testified that her Gastite has "never failed." Ms. George's home was appraised as of March 19, 2012 and again as of June 27, 2012, in each instance at more than she paid for it.

Casey Wasser acquired his Gastite in 2014 or 2015 while building his home in California, Missouri. Mr. Wasser testified that he "do[es]n't recall any representations that [he] received from Titeflex" while his home was being built. Mr. Wasser admitted that CSST "wasn't in [his] lexicon" when his home was built, and he "didn't know" his general contractor "was going to use CSST" as part of the construction. Mr. Wasser's CSST is not bonded and grounded and he testified he has not had problems with it. Mr. Wasser testified that he "ha[s]n't suffered any economic damage at this point" as a result of having Gastite in his home.[5]

---

[5] None of the appraisals and/or inspections of any of the Plaintiffs' homes mention the presence of Yellow CSST.

**The Ward Plaintiffs**

Plaintiffs Amazing Grace Community Church (the "Church"), Ed McKinzie, and Tim Worstell (together, the "Ward Plaintiffs") each own or previously owned a home or structure in which WARDFLEX is installed. WARDFLEX was installed in the Church in 2008–2009, during its construction in Cuba, Missouri. No one lives on the Church's property, and it has no living facilities. Ms. Happel testified, as the Church's representative, that she "ha[d]n't read anything from Ward Manufacturing about either pipe [CSST or black iron pipe]." The Church's CSST was installed by a church member who regularly installed CSST, ordered it through the company he worked for, and installed it. The parties dispute whether the Church paid to have the CSST bonded and grounded. Plaintiff states the Church "paid for materials." Ms. Happel testified that there are no leaks or holes in the Church's WARDFLEX, and that "the gas is, in fact, working." Ms. Happel further testified that "[t]he church hasn't been damaged in any way" and that "the [CSST] hasn't been damaged," but that they want to replace the Yellow CSST with Black CSST. The Church was appraised as of October 27, 2008 at $165,000 more than the purchase price.

Ed McKinzie acquired his WARDFLEX in 2011 while building his home in Columbia, Missouri. Mr. McKinzie did not recall having any conversations about gas piping during the construction of his home and testified that his builder decided to install CSST. Mr. McKinzie testified that he "had never heard of" CSST until an attorney discussed it with him. Mr. McKinzie testified that he saw no advertisements for CSST until the evening before his July 23, 2019 deposition in this case. Mr. McKinzie testified that he did not know whether the WARDFLEX at his former home was bonded and grounded. Mr. McKinzie testified that he did not "have any problems with [his CSST] at all" while living at his former home. Mr. McKinzie's home was appraised as of November 7, 2011 at approximately $7,000 more than he paid for it. Mr. McKinzie

7

sold his home in 2017 "for approximately $43,000 more than [he] purchased it for," and that "the presence of CSST could not have impacted how much [the buyers] were willing to pay for the home."

Tim Worstell acquired his WARDFLEX in 2014 to 2015 while building his home in Columbia, Missouri. Mr. Worstell was not aware of CSST or its presence in his home before he was informed of this lawsuit. Mr. Worstell's WARDFLEX is not bonded and grounded. Mr. Worstell has never had a gas leak at his home.

Plaintiffs' statement of facts contains 164 paragraphs. Plaintiffs have created headings for their "facts" which the Court finds argumentative. However, for purposes of summarizing Plaintiffs' arguments, the headings include, but are not limited to:

- Defendants' Yellow CSST Has Been Tested To Fail At .12 Coulombs, Which Is Much Less Than A Typical Lightning Flash
- Currently The Code Requires That CSST Be Able To Withstand 4.5 Coulombs
- Unjacketed CSST Stainless Steel Is As Much As 25 Times More Resistant To Puncture Than CSST With A Yellow Jacket
- Black Iron Pipe Demonstrated No Melt-Through At 480 Coulombs
- The International Association Of Fire Chiefs Estimates That The Presence Of Yellow CSST In A Home Increases The Risk Of Fire 10-Fold Compared To Homes Without Yellow CSST
- As Of 2011 More Than 717 Million Feet Of CSST Were Installed In U.S. Homes
- According To Robert Torbin, In The First Half Of 2000, There Were An Average Of 4,800 House Fires Per Year Caused By Lightning
- Defendants Have Known Since The 1990s And 2000s That Their Yellow CSST Was Subject To Failure
- Defendants Admit That Their Yellow CSST Is Subject To Failure
- Admissions by Omega Flex that Yellow CSST is Subject to Failure
- Admissions by TiteFlex that Yellow CSST is Subject to Failure
- Admissions by Ward that Yellow CSST is Subject to Failure
- Admissions Jointly Made by All Defendants that Yellow CSST is Subject to Failure
- Statements by Industry Experts that CSST is Subject to Failure
- Defendants' Yellow CSST Products Are Substantially The Same
- Omega Flex Made Numerous Public Misrepresentations On Its CSST Facts Website About CSST Safety, Including That CSST Is The Only Gas Piping That Withstands Quakes And Lightning

8

- Omega Flex Makes Additional Public Misrepresentations That Yellow CSST Is Safe Or Can Be Made Safe
- Titeflex Misrepresented To The Public That Yellow CSST Is Safe Or Capable Of Being Made Safe
- Defendants Jointly Misrepresent That Yellow CSST Is Safe Or Capable Of Being Made Safe
- Defendants Make These Misrepresentations In The Face Of Their Knowledge That Yellow CSST Cannot Be Made Safe
- Defendants Failed To Take Action Based On Economic Considerations
- Despite Knowledge Of The Risks Associated With Yellow CSST, Defendants Failed To Provide Any Warning Until Forced To Do So By Class Action Litigation
- Home Fires Started by Lightning Have Astronomical Economic and Loss-Of-Life Costs

These headings, along with similar headings that contain extensive paragraphs of "facts," continue for several pages. The paragraphs go into great detail about the history of the product and its alleged safety – which would have been the basis for the 2004 state court class action products liability case. It is not until after paragraph 132, on page 73 of Plaintiffs' 106 page brief, that Plaintiffs finally reference for the first time "Statements About Plaintiffs' Yellow CSST."

Paragraph 1 of this section states:

> See Excerpts from the Transcripts of Plaintiffs' Depositions, attached as Exh. A to Plaintiffs' Reply in Support of Motion for Class Certification, Dkt. No. 295.02 "Plaintiffs' Testimony of Defendants' Misrepresentations"): Ed McKinzie at 45:5-15 ("the three main defendants in this case continue to market a product and manufacture a product and allow the sale of a product that was, in my opinion, unfit to be installed in a home. And I think they knowingly not only sold this product with the inherent risks of that product, but I think they also misled the varying trades of – from builders to real estate agent to inspectors with misinformation on how safe the product was."); Cedar Deraps at 8:1-15; Casey Wasser at 8:4-9; James Rehm at 72:21- 73:15, 107:17-23; Ron Metzgar at 135: 1-21; Bobbie Lee at 20:20-23; Brian Immekus at 95:11- 16; and Amazing Grace Community Church at 55:6-14; 109:19-24.

This paragraph references eight of the Plaintiffs' testimonies about their personal opinions and beliefs about Yellow CSST and its safety. It does not include reference to any personal or direct interaction by any Plaintiff with statements made by any Defendant, or that any claim was made

9

by the Defendants to a specific Plaintiff. The "facts" do not include any reference to actions taken by Plaintiffs with regard to any alleged statement made by a Defendant. In fact, there is no evidence that any of the Plaintiffs saw or heard any of the alleged "misrepresentations" that Plaintiffs include in over 100 paragraphs of the preceding statements of facts. Numerous paragraphs include similar statements made by Plaintiffs, such as: "the litigation is about a product that I believe has been promoted as a safe product when, in fact, it is not"; "the three main defendants in this case continue to market a product and manufacture a product and allow the sale of a product that was, in my opinion, unfit to be installed"; "[I was] sold a product or had a product installed on my home that was not as safe as it was once said to be"; and "defendants are misleading inspectors and real estate groups on the safety of the product". Plaintiffs also include paragraphs supporting the claim that they "were unaware of the safety risks of yellow CSST at the time it was installed in their homes or they purchased homes with yellow CSST" (Metzgar "had no knowledge of those pipes, so [he] couldn't formulate an opinion as to whether they were safe); and that "they were concerned about their safety when they learned about yellow CSST."[6]

## STANDARD

Summary judgment is proper where, viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1359 (8th Cir. 1993). "Where there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate." *Quinn v. St. Louis County*, 653 F.3d 745, 750 (8th Cir. 2011). Initially, the moving party bears the burden of

---

[6] Plaintiffs also include statement that have no bearing on their claims such as "Plaintiffs Worstell and Lee testified that other consumers would be upset if they knew about the risks of yellow CSST."

10

demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets the initial step, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To satisfy this burden, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

A question of material fact is not required to be resolved conclusively in favor of the party asserting its existence. Rather, all that is required is sufficient evidence supporting the factual dispute that would require a jury to resolve the differing versions of truth at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248-249. Further, determinations of credibility and the weight to give evidence are the functions of the jury, not the judge. *Wierman v. Casey's General Stores, et al.*, 638 F.3d 984, 993 (8th Cir. 2011).

## DISCUSSION

### I. MMPA CLAIMS

Defendants move for summary judgment on Plaintiffs' Missouri Merchandising Practices Act ("MMPA") claims arguing: 1) Plaintiffs have not sustained an ascertainable loss of money or property; 2) Plaintiffs cannot show an unlawful practice; 3) there is no connection between Plaintiffs' purchases and any statement made by Defendants; and 4) there is no causation.[7]

To prevail on an MMPA claim, Plaintiffs must prove that: 1) they leased or purchased a product or service sold or advertised by Defendants for personal use; 2) they suffered an ascertainable loss of money or property; 3) Defendants committed an unfair or deceptive trade

---

[7] Defendants also argue the Church did not purchase CSST for personal, family, or household use and therefore is not a proper plaintiff under the MMPA.

11

practice; 4) in connection with the sale; (5) which caused the Plaintiffs' loss. Mo. Rev. Stat. §§ 407.020, 025; *Faltermeier v. FCA* US LLC, 2017 WL 1128467, at *3 (W.D. Mo. Mar. 24, 2017) (order granting summary judgment) (internal citations omitted). Plaintiffs' failure to establish an essential element of their claim under the MMPA entitles Defendants to judgment as a matter of law. See *Celotex Corp. v. Catrett*, 477 at 323.

### A. Plaintiffs cannot establish a connection with an alleged misrepresentation and the purchase of their homes.

The MMPA prohibits "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce…" *Faltermeier v. FCA US LLC*, 899 F.3d 617, 622 (8th Cir. 2018); citing Mo. Rev. Stat. § 407.020.1. "Under Missouri law, a wide range of deceptive conduct may qualify as 'in connection with' a purchase." *Id.*, citing *Schuchmann v. Air Servs. Heating & Air Conditioning, Inc.*, 199 S.W.3d 228, 233 (Mo. Ct. App. 2006) (quoting *Ports Petroleum Co., Inc. of Ohio v. Nixon*, 37 S.W.3d 237, 240 (Mo. banc 2001). However, the Eighth Circuit has stated that in order to prevail on a MMPA claim the "alleged misrepresentation must have a relationship with the sale." *Id.,* citing *Conway v. CitiMortgage, Inc.*, 438 S.W.3d 410, 414 (Mo. banc 2014).

In *Faltermeier,* the district court found that the plaintiff could not show that he purchased his vehicle "in connection with" any alleged misrepresentation made by defendant. *Id.* The Eighth Circuit affirmed the district court finding that while the buyer's actual reliance on the defendant's misrepresentation is not required, "evidence of some factual connection between the misrepresentation and the purchase is required." *Faltermeier v. FCA US LLC*, 899 F.3d at 622 ("… there is no evidence that either the seller or the buyer was aware of the misrepresentation. Nor was the intermediary seller an unwitting conduit for passing on the substance of the

12

misrepresentation.") Plaintiffs argue that neither an intent to defraud nor reliance are required under the MMPA. Citing *Johnson v. Atkins Nutritionals, Inc.*, 2018 WL 3398162, at *2 (W.D. Mo. July 12, 2018). However, while this is true, the Eighth Circuit has found that there must be *some* evidence of a connection between the misrepresentation and the purchase. *Faltermeier v. FCA US LLC*, 899 F.3d at 622.

Here, none of the Plaintiffs testified that they made a purchase in connection with any information or misrepresentation made by any Defendant. Considering the facts in a light most favorable to Plaintiffs, the record does not contain facts to support a claim that any of the Plaintiffs made a purchase of Yellow CSST in connection with any statements made by any Defendants regarding the safety of Yellow CSST. To the contrary, the testimony of the Plaintiffs is that they had no knowledge of the presence of Yellow CSST in their homes or any representations of the safety of Yellow CSST at the time they built or purchased their homes. Further, the testimony of plaintiff Deraps, who acquired the Yellow CSST through his family's business, did not indicate he received any information about the product's safety prior to acquiring the product. None of the Plaintiffs have testified that the presence of Yellow CSST in a house motivated their decision to purchase their homes or had any connection to their decision in building their homes.

In addition, the Court notes that the Defendants' marketing and advertising of Yellow CSST, and representations regarding the safety of bonding and grounding of the product, was approved by a state court in a prior products liability class action lawsuit. Because the marketing and advertising of Yellow CSST's safety was approved by, and consistent with, a prior court order entered pursuant to the settlement of a class action, the Defendants' conduct should be considered lawful, absent extraordinary circumstances, so long as it complies with the state court's order. There is no allegation that Defendants have violated the prior Court's order with regard to their

13

representations regarding Yellow CSST. As such, Plaintiffs would be unable to establish that any alleged representations of Yellow CSST were employed using deception, fraud, false pretense, false promise, misrepresentation, or unfair practice when Defendants' statements regarding the products' safety were previously approved by a state court.

Here, Plaintiffs simply cannot establish a connection with any alleged misrepresentation and their purchase or building of homes containing Yellow CSST and as such their claims fail.

### B. Plaintiffs have not sustained an ascertainable loss of money or property.

Even if Plaintiffs could establish a connection between a misrepresentation made by Defendants and the purchase or building of their homes containing Yellow CSST, the Court also finds Plaintiffs cannot establish that they have suffered an ascertainable loss. First, as previously stated there is no evidence of any alleged defect causing any physical harm to any of Plaintiffs' homes. Rather, the Plaintiffs' claims are based on the "benefit of the bargain" and Plaintiffs contend the measure of damages applicable to their claims are: "1) cost of repair; 2) restitution; and 3) disgorgement." To demonstrate a loss of the benefit of the bargain, Plaintiffs must establish that the difference between the actual value of the product and what its value would have been if it had been as represented is different. *Sunset Pools of St. Louis, Inc. v. Schaefer,* 869 S.W.2d 883, 886 (Mo. Ct. App. 1994).

First, there is no evidence that any Plaintiff overpaid for Yellow CSST. In fact, most Plaintiffs, with the exception of plaintiff Deraps, did not personally purchase or acquire the Yellow CSST.[8] Further, Plaintiffs testified they were unaware of the presence of Yellow CSST in their homes when they were either purchased or built. Plaintiffs argue that "although they were

---

[8] Plaintiff Deraps acquired Yellow CSST from his family's company and testified he exchanged labor for the CSST through an informal agreement with his father. He also performed the bonding and grounding of the Yellow CSST himself.

14

previously unaware of the safety risks of Yellow CSST, once they became aware of the alleged risk they were concerned…" and "they want the yellow CSST in their homes replaced." Plaintiffs offer no evidence of any current issues with the function of Yellow CSST in their homes or the need for "repair" other than their conclusory statements that they want the Yellow CSST replaced.

Further, Plaintiffs have offered no evidence of a diminution of value in their homes. In fact, the appraisals show increases in the value of Plaintiffs' homes. Further, the appraisals and inspections of Plaintiffs' homes do not mention the presence of Yellow CSST in any of the homes. Plaintiffs simply have no evidence that they paid more for the product, in this case homes containing Yellow CSST, based on any representation or that the product is worth less than what was represented.

It appears Plaintiffs have abandoned their previous arguments regarding the measure of damages in this case.[9] Plaintiffs' opposition to summary judgment now argues the measure of the benefit of the bargain should be the cost to repair and replace the Yellow CSST in their homes and that the diminution in value of their homes has no bearing on the benefit of the bargain damages. However, Plaintiffs must establish that the Yellow CSST is worth less than what they paid for it.

A review of the record before the Court shows no evidence of a diminution in value of the homes, no evidence that any appraisal or inspection references the presence of Yellow CSST in the homes, and no evidence of any malfunction of the Yellow CSST.

Here, Plaintiffs cannot establish that they overpaid for the Yellow CSST. Dr. Hedlund, Plaintiffs' damages expert, has rendered an opinion regarding how to calculate the cost to repair the Yellow CSST in Plaintiffs' homes and how to calculate restitution amounts for the presence of

---

[9] Plaintiff's Complaint alleges that they suffered an ascertainable loss because their home's value is decreased because of the presence of Yellow CSST.

Yellow CSST. However, Dr. Hedlund's opinion simply attempts to provide what the cost to replace Yellow CSST with Black CSST would be if the Plaintiffs homes were "repaired." This is not enough to show an ascertainable loss of money or property.

At this time there has been no manifestation of any defect in the product and importantly none of the Plaintiffs have replaced the Yellow CSST in their homes. In fact, Plaintiffs have not taken any remedial measures, either by replacing the Yellow CSST or otherwise, despite their alleged knowledge of the "dangers" of the product dating back to when their lawsuit was first filed over 4 years ago. The evidence is that the Yellow CSST is currently performing in Plaintiffs' homes. Plaintiffs claim that they have "safety concerns" with the product in their homes but simply cannot establish that the value of Yellow CSST as represented at the time of the transaction (in this instance when their homes were purchased) is different than the actual value of the product that is currently performing in their homes today. The speculative "replacement costs" alleged by Plaintiffs as the basis for a diminution of value claim is not sufficient. For these reasons, Plaintiffs claims also fail.

Finally, the Court notes that some of the Plaintiffs assert that out of pocket expenses for bonding and grounding amounts to a measure of damages. However, the Plaintiffs that have not had their product bonded and grounded have not shown a loss when they continue to receive the benefit from the product in their homes. Further, the Plaintiffs who have Yellow CSST that is already bonded and grounded cannot show that they incurred any extra or additional costs for the bonding and grounding.

### C. Plaintiffs cannot establish causation.

Finally, "… causation is a necessary element of an MMPA claim." *Bratton v. Hershey Co.*, No. 2:16-CV-4322-C-NKL, 2018 WL 934899, at *2 (W.D. Mo. Feb. 16, 2018) (granting summary

16

judgment on MMPA claim); citing *Owen v. GMC,* 533 F.3d 913, 922 (8th Cir. 2008); see also *Williams v. HSBC Bank USA, N.A.*, 467 S.W.3d 836, 843 (Mo. App. 2015); and MO. APPROVED INSTRUCTIONS (CIVIL) 39.01 (7th ed.) (verdict director for MMPA violation, requiring jury to find that "as a direct result of such conduct, plaintiff sustained damage"). "In other words, a plaintiff who was not injured by a purported MMPA violation cannot sue for the violation." *Id*. Plaintiffs who did not care about an allegedly misleading marketing practice, or who knew about an alleged practice and purchased the products anyway, are not injured by the practice. *Id*. (internal citations omitted). A plaintiff is not required to show reliance in order to prove that a defendant committed an unlawful practice, but the plaintiff must establish they were injured in order to succeed on an MMPA claim. *Id.*

Here, for the reasons set forth herein, none of the Plaintiffs have shown an injury caused by the alleged unlawful practice. There is no evidence any Plaintiff has experienced a defect or problem with the Yellow CSST in their home.

## II. UNJUST ENRICHMENT

To prevail on a claim for unjust enrichment, Plaintiffs must establish that: 1) they conferred a benefit on Defendants; 2) Defendants appreciated the benefit; and 3) Defendants accepted and retained the benefit under inequitable and/or unjust circumstances. *Howard v. Turnbull,* 316 S.W.3d 431, 436 (Mo. Ct. App. 2010). "Unjust retention of benefits only occurs when the benefits were 'conferred (a) in misreliance on a right or duty; or (b) through dutiful intervention in another's affairs; or (c) under constraint.'" *Id.* (quoting *Graves v. Berkowitz*, 15 S.W.3d 59, 62 (Mo. Ct. App. 2000)).

Here, Plaintiffs' claim fails because they cannot show reliance. Plaintiffs must be able to establish that they relied upon the alleged misrepresentation in making the purchase. Plaintiffs simply cannot establish any reliance on an alleged misrepresentation made by Defendants in the

17

purchase of their homes. As previously stated, most of the Plaintiffs had never heard of Yellow CSST when they purchase their homes. Further, Plaintiffs have a working product in their home despite their allegations of the product's safety issues. As such, the evidence shows they have received the use and benefit of Yellow CSST. Finally, as set forth herein, there is no evidence of unfair or misleading conduct when Defendants representations of the product were done in accordance with a prior state court order. For all the reasons stated herein, Plaintiffs' claim for unjust enrichment also fails.

### III. CONSPIRACY

For the reasons stated herein, the Court has found Plaintiffs cannot establish an underlying tort or injury and as a result Plaintiffs' conspiracy claim fails. See *Hamilton v. Spencer,* 929 S.W.2d 762, 767 (Mo. Ct. App. 1996) ("Civil conspiracy is not itself actionable in the absence of an underlying wrongful act or tort."); citing *Williams v. Mercantile Bank of St. Louis,* 845 S.W.2d 78, 85 (Mo.App.1993).

### IV. MOTION FOR CLASS CERTIFICATION

In light of the Court's ruling on summary judgment, the Court **denies** the Motion for Class Certification as moot and further denies Defendants' Motion to Strike the Declarations of Goodson and Rousseau, that are attached as exhibits to the motion for class certification, as moot. (Docs. 225 and 266).

### V. MOTIONS TO EXCLUDE DR. HEDLUND'S OPINIONS

Finally, the Motions to Exclude the Opinions of Dr. Hedlund are **denied** for the purposes of this Court's summary judgment analysis. (Docs. 268 and 310). The Court has reviewed Dr. Hedlund's opinions regarding this calculation of damages based on the cost of repair, restitution, disgorgement and costs of bonding and grounding as it relates to Plaintiffs' claims for loss under the MMPA. However, even considering the information provided by Dr. Hedlund in a light most

18

Case 6:17-cv-03114-MDH   Document 341   Filed 08/13/20   Page 18 of 19

favorable to Plaintiffs, the Court finds Plaintiffs cannot meet the elements of their claims for the reasons stated herein.

Further, to the extent Dr. Hedlund also offers opinions in support of Plaintiffs' motion for class certification the Court **denies** the motion to exclude Dr. Hedlund's opinions regarding damages on a class-wide basis for class certification **as moot** based on its ruling on the motion for summary judgment.

## CONCLUSION

Wherefore, for the reasons set forth herein, the Court **DENIES AS MOOT** Plaintiffs' Motion for Class Certification (Doc. 225) and Defendants' Motion to Strike the Declarations of Mark Goodson and Alain Rousseau (Doc. 266); **DENIES** Defendants' Motions to Exclude Opinions of Aaron Hedlund (Doc. 268 and 310); and **GRANTS** Defendants' Motion for Summary Judgment. (Doc. 305). The Court **ORDERS** judgment entered in favor of Defendants.

**IT IS SO ORDERED.**

DATED: August 13, 2020

                                          */s/ Douglas Harpool*
                                          **DOUGLAS HARPOOL**
                                          **UNITED STATES DISTRICT JUDGE**